UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

CLARA ANNETTE CONNER,        )
                                     )
       Plaintiff,          )
                                     )
v.                                 )    CIVIL ACTION NO.
                                 )    5:11-CV-00024-BG
                                 )    ECF
MICHAEL J. ASTRUE,           )
Commissioner of Social Security,   )
                                 )
       Defendant.      )

## REPORT AND RECOMMENDATION

### Statement of the Case

Pursuant to 42 U.S.C. §§ 405(g) and 1383(c), Plaintiff Clara Annette Conner seeks judicial review of a decision of the Commissioner of Social Security denying her application for disability insurance benefits and supplemental security income. The United States District Judge transferred this case to the undersigned United States Magistrate Judge for further proceedings.

An Administrative Law Judge (ALJ) held a hearing on August 12, 2009, and determined on September 30, 2009, that Conner was not disabled because she could perform jobs that existed in significant numbers in the national economy. The Appeals Council denied review on December 27, 2010. Therefore, the ALJ's decision is the Commissioner's final decision and properly before the court for review. *See Higginbotham v. Barnhart*, 405 F.3d 332, 334 (5th Cir. 2005) (holding that the Commissioner's final decision "includes the Appeals Council's denial of [a claimant's] request for review").

1

**Factual Background**

Conner previously did housekeeping work in houses, hotels, a retail store, and a hospital. (Tr. 115, 139.) She claims that she became disabled on June 22, 2007, due to fibromyalgia, diabetes, arthritis, and depression. (Tr. 114.)

Approximately one week prior to the alleged date of disability onset, treating rheumatologist William D. Ratnoff, M.D., examined Conner and reported that she had limited motion in her right shoulder and right hip, eighteen tender muscle trigger points, painful flexion of the lumbar spine, surgical scars on her left knee, and an antalgic gait. (Tr. 195–96.) Dr. Ratnoff diagnosed Conner with fibromyalgia, back pain, partially frozen right shoulder, right hip pain, type II diabetes, history of asthma, and obesity. *Id.*

On July 24, 2007, Dr. Ratnoff again examined Conner for complaints of pain "all over." (Tr. 165.) After reviewing lab work, x-rays, and MRI results, Dr. Ratnoff diagnosed osteoarthritis in Conner's left knee, osteopenia, back pain, diabetes, and obesity. (Tr. 166.) Dr. Ratnoff also noted that a shoulder MRI showed a lesion on the proximal right humerus that was probably benign. *Id.* He recommended conservative therapy for Conner's left knee, including daily exercise such as walking for thirty minutes a day five days a week. *Id.*

On February 14, 2008, a physical therapist examined Conner and rated her arm and leg strength at 3+/5. (Tr. 461.) The physical therapist also noted that Conner had decreased range of motion in her right arm and trunk, normal range of motion in her legs, and pain with leg movement. *Id.* Conner went to the emergency room for right knee pain on July 30, 2008. (Tr. 281–84.) The examining physician noted moderate tenderness and pain with range of motion. (Tr. 282.) A consulting physician reviewed x-rays of the knee and reported large joint effusion. (Tr. 283.)

On September 5, 2008, and January 27, 2009, Conner submitted function reports in connection with her application for benefits.  (Tr. 121–28, 141–46.)  She reported that she bathed or showered daily and slept or watched television for most of the day, depending on whether she was depressed or in pain.  (Tr. 121, 141.)  She also reported that she prepared cereal, sandwiches, and frozen dinners for herself; occasionally washed dishes; talked to family members on the phone daily; and went shopping and to doctors appointments every other month.  (Tr. 121, 123, 125, 143–44.)  In addition, she stated that she could pay bills, count change, handle a savings account, use a checkbook, get along with authority figures, and walk for one block before needing to rest.  (Tr. 124, 126–27, 144–45.)

On October 2, 2008, consulting physician Piyush Mittal, M.D., examined Conner in connection with her application for benefits.  (Tr. 333–35.)  Dr. Mittal reported that Conner was morbidly obese and had fibromyalgia.  (Tr. 334.)  Additionally, he stated, "The patient does not seem to have much arthritis on the clinical examination[.]"  (Tr. 334.)  Dr. Mittal further found that Conner had mild tenderness in both shoulders, tenderness and decreased range of motion in her back, and mild crepitus in her knees.  (Tr. 334–35.)  He also reported that she walked with a slight limp and used a crutch due to left knee pain.  *Id.*

Approximately one week later, treating internists Rey Vivo, M.D., and Evamaria Nourbaksh, M.D., examined Conner and noted tenderness to palpitation in her right leg and decreased range of motion in her right knee.  (Tr. 456–57.)  Dr. Vivo and Dr. Nourbaksh listed Conner's conditions as uncontrolled diabetes, osteoarthritis, amenorrhea, fatigue, asthma, and depression.  (Tr. 457.)

The following month, consulting physician John Durfor, M.D., reviewed Conner's medical evidence of record and reported that she could occasionally lift twenty pounds; frequently lift ten

pounds; sit, stand, or walk for about six hours in an eight-hour workday; push or pull an unlimited amount; and occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl.  (Tr. 353–54, 359.)  Dr. Durfor also found that the severity of Conner's allegations were not wholly credible based on the medical evidence in her file.  (Tr. 359.)  Randal Reid, M.D., reviewed the evidence in Conner's file and affirmed Dr. Durfor's assessment on February 2, 2009. (Tr. 365.) On February 20, 2009, Tejaswini Shah, M.D., reviewed the evidence of record and noted that Conner had "fairly advanced" osteoarthritis in her left knee. (Tr. 371–72.) Dr. Shah stated that he disagreed with Dr. Durfor and Dr. Reid in that he would limit Conner to standing and walking for two to three hours per day and to only occasional overhead reaching on the right.  *Id.*

On November 13, 2008, a physical therapist evaluated Conner and observed that she could sit for up to forty minutes at a time, walk for up to two minutes at a time, and stand for up to ten minutes at a time.  (Tr. 554.)  He also reported that Conner displayed functional range of motion throughout her body except in lumbar mobility and right arm elevation, which was limited to 80 degrees.  *Id.*

Dr. Nourbaksh examined Conner again on May 21, 2008.  (Tr. 508–09.)  According to Dr. Nourbaksh, Conner's diabetes was very poorly controlled due to poor compliance, and she frequently missed medical appointments.  *Id.*  Dr. Nourbaksh ordered physical therapy and anti-inflammatory medication for Conner's polyarthalgia.  (Tr. 509.)

On May 28, 2009, treating orthopedist Bradley Veazey, M.D., examined Conner. (Tr. 505–06.)  According to Dr. Veazey, Conner displayed 5/5 strength in her left arm, 4/5 strength in her right arm, tenderness to palpitation in her right shoulder, functional range of motion without pain in her hips, pain with range of motion in her right knee, and significant crepitus and tenderness

4

to palpitation in her right leg joint lines.  (Tr. 505.)  After reviewing a right shoulder MRI and knee

x-rays, Dr. Veazey reported that Conner had an unchanged lytic lesion in her humerus, trochanteric

bursitis in her right hip, and arthritis in her right knee.  (Tr. 505–06.)  Dr. Veazey opined that

Conner's bursitis would respond well to physical therapy and that range of motion and strengthening

exercises would provide some symptomatic relief for her shoulder and knee.  (Tr. 506.)

On August 12, 2009, Conner and a vocational expert testified at a hearing before the ALJ.

(Tr. 15–36.)  Conner was represented by counsel at the hearing.  (Tr. 15.)

### Standard of Review

A plaintiff is disabled if he is unable "to engage in any substantial gainful activity by reason

of any medically determinable physical or mental impairment which can be expected to result in

death or which has lasted or can be expected to last for a continuous period of not less than 12

months[.]"  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3) (2012).

"In evaluating a disability claim, the Commissioner conducts a five-step sequential analysis

to determine whether (1) the claimant is presently working; (2) the claimant has a severe

impairment; (3) the impairment meets or equals an impairment listed in appendix 1 of the social

security regulations; (4) the impairment prevents the claimant from doing past relevant work; and

(5) the impairment prevents the claimant from doing any other substantial gainful activity."  *Audler*

*v. Astrue*, 501 F.3d 446, 447–48 (5th Cir. 2007); *see also* 20 C.F.R. §§ 404.1520(a)(4),

416.920(a)(4) (2012).  "The claimant bears the burden of showing she is disabled through the first

four steps of the analysis; on the fifth, the Commissioner must show that there is other substantial

work in the national economy that the claimant can perform."  *Audler*, 501 F.3d at 448.  Before

proceeding to steps 4 and 5, the Commissioner must assess a claimant's residual functional capacity

(RFC), defined as "the most [a claimant] can still do despite [his] limitations."  20 C.F.R. §§ 404.1545(a)(1), 404.1520(a)(4)(iv)-(v), 416.945(a)(1), 416.920(a)(4)(iv)-(v).

Judicial review of a decision by the Commissioner is limited to two inquiries: a court must "consider only whether the Commissioner applied the proper legal standards and whether substantial evidence in the record supports the decision to deny benefits." *Audler*, 501 F.3d at 447; 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive[.]").  "Substantial evidence is more than a scintilla but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Watson v. Barnhart*, 288 F.3d 212, 215 (5th Cir. 2002).  "Conflicts in the evidence are for the [Commissioner] and not the courts to resolve." *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990).

## Discussion

Among other arguments, Conner asserts that the ALJ erroneously discounted medical opinions of treating physicians who found that she had arthritis.  (Pl.'s Br. 25–26.)  This argument has merit and requires remand.  The undersigned does not reach Conner's remaining arguments.

In determining a claimant's RFC, an ALJ must consider all of a claimant's medically determinable impairments, including those that are not severe.  20 C.F.R. §§ 404.1545(a)(2), 404.1545(e), 416.945(a)(2), 416.945(e).  A medically determinable impairment is one that is "demonstrated by 'medically acceptable clinical and laboratory diagnostic techniques.'" *Greenspan v. Shalala*, 38 F.3d 232, 239 (5th Cir. 1994) (quoting 42 U.S.C. § 423(d)(3)).  "A treating physician's opinion on the nature and severity of a patient's impairment will be given controlling weight if it is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques

and is not inconsistent with . . . other substantial evidence.'" *Newton v. Apfel*, 209 F.3d 448, 455

(5th Cir. 2000) (quoting *Martinez v. Chater*, 64 F.3d 172, 176 (5th Cir. 1995)).  "[A]bsent reliable

medical evidence from a treating or examining physician controverting [a] claimant's treating

specialist, an ALJ may reject the opinion of [a] treating physician *only* if the ALJ performs a detailed

analysis of the treating physician's views under the criteria set forth" in the regulations governing

Social Security claims.  *Id.* at 453.

In the instant case, the ALJ found that Conner had the RFC to perform light work "limited

by the need for a clean atmospheric environment[] and no overhead work with the dominant upper

extremity."  (Tr. 10.)  "Light work involves lifting no more than 20 pounds at a time with frequent

lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very

little, a job is in this category when it requires a good deal of walking or standing, or when it

involves sitting most of the time with some pushing and pulling of arm or leg controls."  20 C.F.R.

§§ 404.1567(b), 416.967(b).  Light work also "presupposes an ability to stand and walk at least 6

hours in an 8-hour work day."  *Lawler v. Heckler*, 761 F.2d 195, 198 (5th Cir. 1985) (quoting

Dictionary of Occupational Titles).

When assessing Conner's RFC the ALJ stated, "There is no evidence that the claimant has

arthritis."  (Tr. 12.)  Substantial evidence does not support this conclusion.  Several of Conner's

treating physicians concluded that she had osteoarthritis in her knees based on medically acceptable

clinical and laboratory diagnostic techniques.  On July 24, 2007, Dr. Ratnoff diagnosed Conner with

osteoarthritis in her left knee after reviewing laboratory tests and x-rays.  (Tr. 166.)  On October 9,

2008, Dr. Vivo and Dr. Nourbaksh stated that Conner had osteoarthritis after noting tenderness to

palpitation and decreased range of motion in her right knee.  (Tr. 456–57.)  After reviewing knee

x-rays and noting significant crepitus and pain with knee motion on May 28, 2009, Dr. Veazey stated, "We will also discuss with her corticosteroid injections and Synvisc for her right knee arthritis."  (Tr. 505–06.)

These opinions were consistent with other substantial evidence: For example, on February 14, 2008, a physical therapist rated Conner's lower extremity strength as 3+/5 and observed that she had pain with leg movement.  (Tr. 461.)  After examining Conner on October 2, 2008, consulting physician Dr. Mittal stated, "The patient does not seem to have much arthritis on the clinical examination[,]" indicating that she did have some arthritis.  (Tr. 334.)  Dr. Mittal also noted that Conner displayed crepitus in her knees, walked with a slight limp, and used a crutch due to left knee pain.  (Tr. 334–35.)  Finally, Dr. Shah reviewed Conner's medical records and reported that she had "fairly advanced" osteoarthritis in her left knee on February 20, 2009.  (Tr. 371–72.)

The ALJ cited two pieces of evidence in support of his finding that Conner did not have arthritis.  First, he mistakenly stated that Dr. Mittal's examination "showed no evidence of arthritis[.]"  (Tr. 11.)  Second, he stated that tests for rheumatoid factors were negative, which is relevant to a diagnosis of rheumatoid arthritis but does not contradict the treating physicians' diagnoses of osteoarthritis.  (Tr. 12.)  Therefore, the ALJ neither pointed to reliable medical evidence controverting the diagnoses of osteoarthritis, nor did he perform a detailed analysis under the criteria set forth in the governing regulations.  *Newton*, 209 F.3d at 453.

For the foregoing reasons, substantial evidence does not support the ALJ's conclusion that arthritis was not one of Conner's medically determinable impairments.  *See id.* at 457; *compare Greenspan*, 38 F.3d at 237 (holding that substantial evidence supported ALJ's decision to disregard treating physicians' diagnoses that "were based upon dubious medical techniques and were

conclusory").

## Conclusion

For the foregoing reasons, this court recommends that the United States District Court **REVERSE** the Commissioner's decision and **REMAND** this case for administrative proceedings consistent with this opinion.

A copy of this Report and Recommendation shall be served on all parties in the manner provided by law.  Any party who objects to any part of this Report and Recommendation must file specific written objections within fourteen days after being served with a copy.  *See* 28 U.S.C. § 636(b)(1) (2012); Fed. R. Civ. P. 72(b).  To be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's Report and Recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.  Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error.  *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

Dated:          February 9, 2012.

NANCY M. KOENIG
United States Magistrate Judge

9